**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

KENNETH D. ALPART, et al.,  :
    Plaintiffs,  :
        :  NO. 07-cv-4457
    v.    :
        :
GENERAL LAND    :
PARTNERS, INC., et al.  :
    Defendants.  :

**MEMORANDUM AND ORDER**

August __19__, 2008        Anita B. Brody, J.

**I. INTRODUCTION**

This is a dispute between business partners over the proceeds from a real estate

investment venture.  Plaintiffs Kenneth Alpart, Lynette Kerrane, and Eric Wojcikiewicz,[1] have

sued defendants General Land Partners, Inc., Creek Road Development Group, L.P., Creek Road

Development Group, Inc., Tracy Mignatti,[2] Ted Mignatti, Jr., and Steve McKenna for breach of

---

[1]  Plaintiffs Lynette Kerrane and Eric Wojcikiewicz represent the interests of Dan Kerrane, who is dead.  Lynette Kerrane is Dan Kerrane's widow.  Along with Lynette Kerrane, Eric Wojcikiewicz is a trustee of Dan Kerrane's estate's trust.  Lynette Kerrane and Eric Wojcikiewicz are proper plaintiffs in their role as trustee.  See Stewart v. Rossi, 681 A.2d 214, 215 (Pa. Super. Ct. 1996).

[2]  Defendant Tracy Mignatti represents the interests of Ted Mignatti, III, who is dead.  She is Ted Mignatti, III's widow and the executrix of his estate.  Tracy Mignatti is a proper defendant in her capacity as the executrix of his estate.  See 10 SUMM. PA. JUR. 2D PROBATE, ESTATES, AND TRUSTS § 12:4 (2008).

fiduciary duty, breach of contract, tortious interference with contract, civil conspiracy, and unjust enrichment.  The plaintiffs also request a declaratory judgment and an accounting.  The defendants filed a motion to dismiss the plaintiffs' Amended Complaint under Fed. R. Civ. P. Rules 12(b)(1) and (6).  Jurisdiction is proper under 28 U.S.C. § 1332.[3]

## II. Factual Background [4]

In 1994, three friends, Kenneth Alpart, Dan Kerrane, and Ted Mignatti, III, entered into an oral partnership agreement to acquire and develop land in Bucks County, Pennsylvania (the "Bucks County Agreement").[5]  Kenneth Alpart and Dan Kerrane agreed to provide the capital and Ted Mignatti, III agreed to provide real estate connections because his family is involved in real estate.  In a letter to Kenneth Alpart and Dan Kerrane dated August 9, 1994, Ted Mignatti, III confirmed the terms of the Bucks County Agreement.  In return for their capital investment, Alpart and Kerrane were each entitled to the return of their capital investment, 25% of the profits from the resale of the land ("land profits"), also if the land were resold to a company connected

---

[3]  The citizenship of the plaintiffs is as follows:
- Kenneth Alpart is a citizen of New York.
- Lynette Kerrane is a citizen of Illinois.
- Eric Wojcikiewicz is a citizen of Illinois.

All of the defendants are citizens of Pennsylvania.  Accordingly, the plaintiffs and defendants are diverse.  Additionally, the plaintiffs claim that the amount in controversy well exceeds $75,000.

[4]  In deciding a motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor.  Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).

[5]  The parties dispute the existence and nature of the "Bucks County Agreement." Because I take the plaintiffs' allegations as true in deciding a motion to dismiss, I adopt the plaintiffs' view of the Bucks County Agreement – that it was an oral partnership agreement to purchase and develop land in Bucks County, Pennsylvania.

to the Mignatti family (a "Mignatti related company"),[6] Alpart and Kerrane would be entitled to

12.5% of any profits from development ("building profits").  In addition,

> [I]f any land is sold to a [Mignatti related company], a fair market
> value for the ground will be established to determine both a
> transfer price and the basis for the [] split on the "land profits."  No
> money will be transferred at this time.

(August 9, 1994 Letter, ¶ 5.)

The Bucks County Agreement set up a limited partnership, the LC Associates, L.P., ("LC

Partnership") to purchase real estate.  Four limited partners, Kenneth Alpart, Dan Kerrane, Ted

Mignatti III, and Ted Mignatti, Jr., and one general partner, General Land Partners, Inc. ("GLP")

comprised the LC Partnership.  In August 1994, the LC Partnership purchased 276 acres of land

in Bucks County, Pennsylvania (the "Bucks County land").[7]

In 2006, GLP, acting as the general partner of the LC Partnership, transferred the Bucks

County land to defendants Creek Road Development Group, L.P. and Creek Road Development

Group, Inc. (collectively the "Creek Road defendants").  The Creek Road defendants are operated

and controlled by the Mignatti family and Steve McKenna, president of the Mignatti companies.

GLP transferred the land to the Creek Road defendants without first notifying the plaintiffs or

establishing the fair market value of the land.

After the transfer of the Bucks County land, other Mignatti related companies began

developing "Heritage Creek," a different nearby tract of land.  The development of the Bucks

---

[6]  The Mignatti controlled companies are not a single legal entity and these companies as
a whole are not a party to this action.

[7]  On October 4, 1999, the LC Partnership purchased 32.56 additional acres of land that
were contiguous with the original parcel of land.  The partners agreed that this additional land
would be treated the same as the land initially acquired by the LC Partnership.

3

County land was postponed because of the Heritage Creek development.  Although the LC Partnership had no interest in the Heritage Creek land or development, the Mignatti related companies profited from this development.

Also after the transfer of the Bucks County land, Steve McKenna, president of the Mignatti companies, told Kenneth Alpart and Dan Kerrane that they would each receive 6.25% of the building profits, rather than the 12.5% provided in the Bucks County Agreement.

The plaintiffs, Kenneth Alpart and representatives for Dan Kerrane, sued GLP, the Creek Road defendants, Ted Mignatti, Jr., Tracy Mignatti,[8] and Steve McKenna because:

- the Bucks County land was transferred to a Mignatti related company at below market value without notice and without establishing the fair market value;

- McKenna said that the building profits would not be distributed as agreed; and

- the development of the Bucks County land was delayed.

The plaintiffs' Amended Complaint contains the following counts:

(I)     Breach of Fiduciary Duty against GLP, Tracy Mignatti, and Ted Mignatti, Jr.;

(II)    Breach of the Bucks County Agreement against Tracy Mignatti;

(III)   Breach of the LC Agreement against Tracy Mignatti, Ted Mignatti, Jr., and GLP;

---

[8]  The plaintiffs named Tracy Mignatti in her individual capacity and as the executrix of Ted Mignatti, III's estate.  But, in their response to the defendants' motion to dismiss the plaintiffs explained that they sued Tracy Mignatti to ensure that Ted Mignatti, III's continuing interests and liabilities are represented.  (Doc. #24, pg. 19)("Plaintiffs base their claim upon the facts, as pleaded, that Ms. Mignatti, widow of Ted Mignatti III, is his successor in interest and the Executrix of his Estate.")  Therefore, any claims against Tracy Mignatti in her individual capacity are dismissed.

(IV)     Tortious Interference with the Bucks County Agreement
against Ted Mignatti, Jr., Steve McKenna, GLP, and the
Creek Road defendants;

(V)      Tortious Interference with the LC Agreement against Steve
McKenna and the Creek Road defendants;

(VI)     Civil Conspiracy against all defendants;

(VII)    Unjust Enrichment against all defendants;

(VIII)   Declaratory Judgment against all defendants; and

(IX)     Accounting from GLP and the Creek Road defendants.

The defendants moved to dismiss all counts under Fed. R. Civ. P. Rules 12(b)(1) and (6).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

The defendants move to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1)

for lack of subject matter jurisdiction because there is no case or controversy.  Article III of the

United States Constitution requires that this Court only address cases or controversies.  U.S.

CONSTITUTION, art. III, § 2, cl. 1.  To present a justiciable case or controversy, a case must be

ripe for review.  See Artway v. Attorney Gen., 81 F.3d 1235, 1246-47 (3d Cir. 1996).  For a case

to be ripe:

(1)      the plaintiff must have suffered an injury in fact - an
invasion of a legally protected interest which is (a) concrete
and particularized and (b) actual or imminent, not
conjectural or hypothetical;

(2)      there must be a causal connection between the injury and
the conduct complained of . . . ; and

(3)      it must be likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision.

Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003). A claim is not ripe if the adjudication "rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 561 (3d Cir. 2001). This inquiry "reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs of – even repetitive – [later] litigation." Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 735 (1998).

The defendants argue that this entire case is not ripe and therefore this Court lacks subject matter jurisdiction because the case is dependent on the future distribution of building profits.[9] When this motion was filed, no building profits had been distributed and therefore, the break-down of the building profit distribution was contingent on future events.

In the Amended Complaint, the plaintiffs allege the following harms:[10]

- causing the Bucks County land to be transferred to a Mignatti related company without advanced notice to Plaintiffs;

- causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land;

---

[9] The defendants challenge both the ripeness of the plaintiffs' claims and the plaintiffs' standing to bring these claims. "Whereas ripeness is concerned with when an action may be brought, standing focuses on who may bring a ripe action." Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 n.13 (3d Cir. 1992). Because the defendants' arguments concern timing, they most properly address ripeness. In any event, "[t]he standing question . . . bears close affinity to questions of ripeness – whether the harm asserted has matured sufficiently to warrant judicial intervention . . . ." Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975).

[10] This list is a conglomeration of the underlying allegations for the plaintiffs' breach of fiduciary duty, breach of contract, tortious interference with contract, and civil conspiracy claims.

- causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value;

- establishing a distribution plan that has reduced Plaintiffs' shares of the building profits;

- causing the transfer and/or development of the Bucks County land to be delayed by, inter alia, construction of the Heritage Creek project; and

- informing Plaintiffs that Defendants will distribute to Plaintiffs less than their agreed share of the building profits.

(Amended Complaint, ¶¶ 71; 75, 76, 81, 82.)  The allegations that involve the building profits, "establishing a distribution plan that has reduced Plaintiffs' shares of the building profits" and "informing Plaintiffs that Defendants will distribute to Plaintiffs less than their agreed share of the building profits," are encompassed in the plaintiffs' claim for anticipatory breach, discussed later in this memorandum.  Besides the anticipatory breach claim, none of the plaintiffs other factual allegations depends on the future contingent distribution of building profits.  Accordingly, the defendants' motion to dismiss this action because it is unripe due to the contingent nature of the alleged harms is denied.

**B.  Failure to State a Claim**

The defendants move to dismiss the Amended Complaint because the plaintiffs have not stated a claim upon which relief can be granted.  According to Fed. R. Civ. P. 12(b)(6), a court must grant a motion to dismiss if the plaintiff fails "to state a claim upon which relief can be granted."  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal quotations omitted).

### 1. Breach of Fiduciary Duty

The plaintiffs claim that GLP, Ted Mignatti Jr., and Ted Mignatti, III breached a fiduciary duty owed to the plaintiffs pursuant to the LC Agreement.  The plaintiffs allege that they breached the duty of "total fairness" by:

- causing the Bucks County land to be transferred to a Mignatti related company without advance notice to Plaintiffs; (Amended Complaint, ¶ 71 (a).)

- causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land; (Amended Complaint, ¶ 71 (b).)

- causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value; (Amended Complaint, ¶ 71 (c).);

- establishing a distribution plan that has reduced Plaintiffs' shares of the building profits . . .; (Amended Complaint, ¶ 71 (d).) and

- causing the transfer and/or development of the Bucks County land to be delayed by, inter alia, construction of the Heritage Creek project. (Amended Complaint, ¶ 71 (e).)

The defendants move to dismiss this claim because: (a) it is barred by the gist of the action doctrine, and (b) limited partners do not owe a fiduciary duty to their partners.

### (a) Gist of the Action Doctrine

The defendants argue that the gist of the action doctrine bars the plaintiffs' fiduciary duty claim.  The gist of the action doctrine focuses on the source of the claims to evaluate whether tort

claims pleaded along with contract claims constitute freestanding causes of action.  Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79 (3d Cir. 2001).  A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations.  See eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002).  However, claims for breach of fiduciary duty and breach of contract can coexist if the fiduciary duty is based on duties imposed as a matter of social policy and if the fiduciary duty is not based on a contractual agreement between the parties.  See Bohler-Uddeholm, 247 F.3d 79.

Under Pennsylvania law, joint venturers owe fiduciary duties beyond the terms of their contract.  Id. at 104-05.  As a matter of social policy, general partners of a limited partnership owe a fiduciary duty to the limited partners.  15 Pa. C.S. §§ 8533 & 8334; Jarl Investments, L.P. v. Fleck, 937 A.2d 1113, 1123 (Pa. Super. Ct. 2007).  The defendants argue that the plaintiffs' fiduciary duty claim is barred by the gist of the action doctrine because it merely duplicates the breach of contract claims.

Three of the plaintiffs' breach of fiduciary duty allegations are based on contractual claims:

- causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land; (Amended Complaint, ¶ 71 (b).)

- causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value; (Amended Complaint, ¶ 71 (c).) and

- establishing a distribution plan that has reduced Plaintiffs' shares of the building profits . . . (Amended Complaint, ¶ 71 (d).)

These are the same as the plaintiffs' breach of contract and anticipatory breach claims and the terms of the Bucks County and LC Agreements cover these claims.  Therefore, the gist of the action doctrine bars these allegations of breach of fiduciary duty and the defendants' motion to dismiss is granted.

However, the Bucks County and LC Agreements do not reach two of the breach of fiduciary duty claims: causing the Bucks County land to be transferred to a Mignatti related company without advance notice to Plaintiffs; and causing the transfer and/or development of the Bucks County land to be delayed by, inter alia, construction of the Heritage Creek project. (Amended Complaint, ¶¶ 71 (a) & (e).)   The agreements neither require notice of any transfer to a Mignatti related company, nor require the prioritization of the development of the Bucks County land over a neighboring parcel of land owned by the Mignatti companies.  Instead, these duties may come from the social contract inherent in a partnership – the fundamental characteristics of trust, fairness, honesty, and good faith that define the essence of the partners' relationship.  Because the plaintiffs' claims for breach of fiduciary duty as to the lack of notice prior to transfer and as to the prioritization of the development of the Bucks County land may be matters of social policy and not contract, the gist of the action doctrine does not apply. Therefore, the motion to dismiss is denied as to the allegations of breach of fiduciary duty caused by the lack of notice and development delay.

<u>            (b) Fiduciary Duties of Limited Partners</u>

The plaintiffs bring the breach of fiduciary duty claims against GLP, Ted Mignatti, Jr., and Tracy Mignatti as the executrix of Ted Mignatti, III's estate.  GLP is the general partner of the LC Partnership.  Before his death, Ted Mignatti, III, and Ted Mignatti, Jr. were limited partners of the LC Partnership.  The defendants argue that Ted Mignatti, Jr. and Tracy Mignatti, as the executrix of Ted Mignatti, III's estate, do not owe the plaintiffs a fiduciary duty because of their limited partner status.

The Pennsylvania Uniform Limited Partnership Act ("PULPA") provides that:

> A limited partner is not liable, solely by reason of being a limited partner, under an order of a court or in any other manner, for a debt, obligation or liability of the limited partnership of any kind or for the acts of any partner, agent or employee of the limited partnership.

15 Pa. C.S. § 8523(a).[11]  The limited partners are not liable based solely on their limited partner status and the plaintiffs must show other grounds for holding them personally liable.

The plaintiffs argue that Ted Mignatti, Jr. and Ted Mignatti, III (through Tracy Mignatti as the executrix of his estate) can be held liable for a breach of fiduciary duty under the

---

[11]  The parties disagree about whether the current version of the statute that was amended in 2001 controls, or whether the previous version that was in effect when the partnership was initiated in 1994 controls.  The pre-amendment version imposed liability on limited partners when they acted to control the partnership whereas the post-amendment version does not.  <u>See</u> 15 Pa. C.S. § 8523 cmt. (2001).  Even if applicable, the pre-amendment version of PULPA would not impose liability on Ted Mignatti, Jr. and Ted Mignatti, III because for liability to attach, the plaintiffs had to reasonably believe that the limited partner was actually a general partner.  The plaintiffs here do not contend that they believed the limited partners to be general partners.  Accordingly, both the pre- and post-amendment versions of the PULPA protect these limited partners from liability.

participation theory.[12]  The Pennsylvania participation theory "imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation."  Wicks v. Milzco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983).  Under Pennsylvania law, "[t]he limited partner is in 'a position analogous to that of a corporate shareholder,' an investor who likewise has limited liability and no voice in the operation of an enterprise." Freedman v. Tax Review Bd. of City of Phila., 243 A.2d 130, 134 (Pa. Super. 1968) (citations omitted).  Liability under this theory only attaches if the defendants participate in the wrongful act.  Therefore, a limited partner can be held liable under the participation theory for a "misfeasance," the improper performance of an act, but not for "mere nonfeasance," the omission of an act which a person ought to do.  Brindley v. Woodland Village Restaurant, 652 A.2d 865, 868 (Pa. Super. 1995) (citing Wicks, 470 A.2d 86).  The question is whether the alleged wrong was "a result of an active, knowing participation" by the defendants.  Id. at 870.

_____      The plaintiffs allege that the defendants were "actively involved in the management of the LC Partnership, and their participation in the control of the business of such entities was substantially the same as the exercise of such powers by the general partners of such entities." (Amended Complaint, ¶ 66.)  The plaintiffs further allege that in this capacity as general partners, the limited partners breached a fiduciary duty owed to the plaintiffs.  The participation of the limited partners in the alleged breaches of fiduciary duty is unclear at this point in the litigation. Therefore, the motion to dismiss these claims is denied without prejudice to be raised again at a later stage in the litigation.

---

[12]  The plaintiffs also argue that the limited partners can be held liable because of the terms of the PULPA and the LC Agreement.  Because I find that the participation theory is sufficient for holding the limited partners liable, I do not reach these arguments.

## 2. Breach of Contract

The plaintiffs allege that Ted Mignatti, III (through Tracy Mignatti as the executrix of his estate) breached the Bucks County Agreement and that Ted Mignatti, III (through Tracy Mignatti as the executrix of his estate), Ted Mignatti, Jr., and GLP breached the LC Agreement by:

- causing the Bucks County land to be transferred to a Mignatti related company without advanced notice to Plaintiffs; (Amended Complaint, ¶¶ 75 (a) & 81 (a).)

- causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land; (Amended Complaint, ¶¶ 75 (b) & 81 (b).)

- causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value; (Amended Complaint, ¶¶ 75 (c) & 81 (c).) and

- causing the transfer and/or development of the Bucks County land to be delayed by, inter alia, construction of the Heritage Creek project.  (Amended Complaint, ¶¶ 75 (d) & 81 (d).)

Additionally, the plaintiffs claim that Tracy Mignatti, Ted Mignatti, Jr., and GLP have "anticipatorily breached the [agreements] by absolutely and unequivocally informing Plaintiffs that Defendants will distribute to Plaintiffs less than their agreed share of the building profits." (Amended Complaint, ¶¶ 76 & 82.)

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege three things: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damages.  CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

13

The defendants moved to dismiss the breach of contract claims for various reasons and I discuss the defendants' arguments separately below.

### (a) Bucks County Agreement as a Contract

The defendants argue that the plaintiffs have not sufficiently alleged that the Bucks County Agreement is a binding contract and therefore the breach of contract claim against Tracy Mignatti under that agreement should be dismissed. The defendants contend that a plain reading of the August 9, 1994 letter proves that it is not a binding agreement, but rather an offer that in and of itself cannot be considered a contract.

The plaintiffs agree that the August 9, 1994 letter is not a contract. However, the plaintiffs claim that the Bucks County Agreement is an oral partnership agreement for acquiring and potentially developing land in Bucks County and that the August 9, 1994 letter merely memorializes the terms of that oral agreement. (Amended Complaint, ¶¶ 20 & 23.) A partnership agreement need not be in writing, even if the partnership is formed for the purpose of owning or dealing in real property. See DeMarchis v. D'Amico, 637 A.2d 1029, 1033 (Pa. Super. Ct. 1994). Although the nature and terms of the Bucks County Agreement are unclear, the plaintiffs have made sufficient allegations to support their contention that the Bucks County Agreement is a contract. Accordingly, the defendants' motion to dismiss the plaintiffs' breach of contract claim relating to the Bucks County Agreement is denied.

### (b) Allegation of Breach for Transfer Without Notice

The defendants move to dismiss the plaintiffs' claim that the defendants breached the Bucks County and LC agreements by transferring the land without first notifying the plaintiffs. The defendants argue that the plaintiffs have not alleged the second element of a breach of

contract claim, that there was a breach of duty, because there was no contractual duty for the plaintiffs to be notified prior to a transfer to a Mignatti related company.

The plaintiffs pled that the August 9, 1994 letter and the LC Agreement contained the terms of the Bucks County and LC agreements.  Both the Bucks County Agreement and the LC Agreement contemplates the possible sale to a Mignatti related company.  But, from the face of the August 9, 1994 letter and the LC Partnership Agreement, neither agreement requires advance notice of the transfer of land to a Mignatti related company.[13]  Accordingly, the plaintiffs' breach of contract claims based on the failure to provide notice are dismissed.

### (c) Anticipatory Breach of Contract

The plaintiffs claim that Tracy Mignatti has anticipatorily breached the Bucks County Agreement and that Tracy Mignatti, Ted Mignatti, Jr., and GLP have anticipatorily breached the LC Agreement.  Anticipatory breach claims are forward looking by nature, so Pennsylvania law requires a claim of anticipatory breach to include "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so."  Pa. Avenue Corp. v. Federation of Jewish Agencies of Greater Philadelphia, 489 A.2d 733 (Pa. 1985) (quoting McClelland v. New Amsterdam Casualty Co., 185 A. 198 (Pa. 1936)).  A statement by a party that he will not or cannot perform in accordance with an agreement creates such a breach.  Oak Ridge Const. Co. v. Tolley, 504 A.2d 1343, 1346 (Pa. Super. Ct. 1985).

---

[13]  In deciding a motion to dismiss, a court may properly consider any documents incorporated by reference into the complaint and all documents of which it can take judicial notice.  Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007).  The August 9, 1994 letter and the LC Agreement were attached to and referenced in the Amended Complaint.

The plaintiffs claim that the defendants anticipatorily breached through Steve McKenna – acting as their agent – when McKenna "absolutely and unequivocally" informed the plaintiffs that the "defendants would distribute less than their agreed share of the building profits." (Amended Complaint, ¶¶ 76 & 82.)  McKenna allegedly informed Alpart and Kerrane that they would each only get 6.25%, instead of 12.5%, of the building profits.  The defendants move to dismiss this claim because the plaintiffs have not adequately pled Steve McKenna's agency relationship so as to support the claim of anticipatory breach against Tracy Mignatti, Ted Mignatti, Jr., and GLP.

To sustain a claim based on a principle-agent relationship, a plaintiff must make allegations beyond the actions of the agent alone.  See D&G Equipment Co., Inc. v. First Nat'l Bank of Greencastle, 764 F.2d 950, 954 (3d Cir. 1985) (finding that "an agent cannot, simply by his own words, invest himself with apparent authority.  Such authority emanates from the actions of the principal and not the agent").  Accordingly, the plaintiff must allege apparent authority stemming from the principle.  Id.

In the Amended Complaint, the plaintiffs claim that McKenna has "held himself out as president of the business trading as Mignatti Companies" and that he has "on behalf of and with the authority of the other Defendants" made statements regarding the distribution of building profits.  (Amended Complaint, ¶¶ 38 & 39.)  Also, the plaintiffs claim that McKenna and the other defendants acted as if McKenna was the president of the Mignatti companies.  Therefore, the plaintiffs have sufficiently pled McKenna's agency status so as to sustain the anticipatory breach claim against Tracy Mignatti, Ted Mignatti, Jr., and GLP and the motion to dismiss the anticipatory breach claim is denied.

16

(d) Allegation of Damages

The defendants argue that the plaintiffs have failed to allege damages, the third element

of a breach of contract claim, because the damages are speculative and contingent upon future

events.  In a breach of contract claim, damages must be proved with "reasonable certainty, which

at a minimum embraces a rough calculation that is not 'too speculative, vague or contingent'

upon some unknown factor."  CoreStates Bank, 723 A.2d at 225-26.  The defendants argue that

the plaintiffs' damages are wholly speculative and contingent upon future events: first, there must

be "building profits" and second, the profits must be distributed differently than agreed.[14]

Because the alleged damages for the breach of contract claims may stem from the

defendants' past breaches, the alleged damages may not depend on the future distribution of the

building profits.  Accordingly, the defendants' motion to dismiss is denied.

(e) Breach of Contract Claims Against Limited Partners

The defendants argue that Ted Mignatti, Jr. and Ted Mignatti, III (through Tracy Mignatti

as the executrix of his estate) are not proper defendants for claims relating to the breach of the

LC Agreement because they are protected by their limited partner status.[15]  The limited partners

---

[14] The defendants also argue that the alleged damages are contingent because under the
Bucks County Agreement, the "land profits" are not to be paid immediately upon the sale of the
land.  Although the agreement provides that the land profits will be paid later, the land profits are
calculated once the land has been sold.

[15] As stated in the breach of fiduciary duty section, the Pennsylvania Uniform Limited
Partnership Act ("PULPA") provides that:
> A limited partner is not liable, solely by reason of being a limited
> partner, under an order of a court or in any other manner, for a
> debt, obligation or liability of the limited partnership of any kind or
> for the acts of any partner, agent or employee of the limited
> partnership.

are not liable based solely on their limited partner status and the plaintiffs must show other grounds for holding them personally liable.

The plaintiffs argue that Ted Mignatti, Jr. and Ted Mignatti, III (through Tracy Mignatti as the executrix of his estate) are liable for the breach of contract claims under the participation theory.  The Pennsylvania participation theory "imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation."  Wicks, 470 A.2d at 90.  Under Pennsylvania law, "[t]he limited partner is in 'a position analogous to that of a corporate shareholder,' an investor who likewise has limited liability and no voice in the operation of an enterprise."  Freedman, 243 A.2d 130 at 134 (citations omitted).  Liability under the theory only attaches when the defendant participates in the wrongful act; therefore a limited partner can be held liable under the participation theory for a "misfeasance," the improper performance of an act, but not for "mere nonfeasance," the omission of an act which a person ought to do.  Brindley, 652 A.2d 865 at 868 (citing Wicks, 470 A.2d 86).  The question is whether the alleged wrong was "a result of an active, knowing participation" by the defendant. Id. at 870.  The participation theory only imposes liability for breach of contract when the defendant personally made representations in his individual capacity and not on behalf of the corporation or partnership.  Loeffler v. McShane, 539 A.2d 876 (Pa. Super. 1988).

In this case, the plaintiffs are suing the defendants for breaching the limited partnership agreement – an agreement that Ted Mignatti, Jr. and Ted Mignatti, III personally entered into in their individual capacities.  Because they entered into the limited partnership in their individual

---

15 Pa. C.S. § 8523(a).

capacities, they may be liable under the participation theory for breach of contract.  The

remaining breach of contract claims are:

> • causing the Bucks County land to be transferred to a
> Mignatti related company without having first established a
> fair market value price for the land; (Amended Complaint,
> ¶¶ 75 (b) & 81 (b).)

> • causing the land profits derived from the transfer price of
> the Bucks County land to be reduced by transferring the
> property to a Mignatti related company at less than fair
> market value; (Amended Complaint, ¶¶ 75 (c) & 81 (c).)
> and

> • causing the transfer and/or development of the Bucks
> County land to be delayed by, inter alia, construction of the
> Heritage Creek project. (Amended Complaint, ¶¶ 75 (d) &
> 81 (d).)

Additionally, the plaintiffs claim that the defendants anticipatorily breached the agreements.

(Amended Complaint, ¶¶ 76 & 82.)

Ted Mignatti, III and Ted Mignatti, Jr.'s participation in these alleged breaches of

contract is unclear at this point in the litigation.  Accordingly, the motion to dismiss the breach of

contract claims based on the limited partners' status is denied without prejudice to be raised

again at a later stage in the litigation.

### 3. Tortious Interference with Contract

The plaintiffs claim that Steve McKenna and the Creek Road defendants tortiously

interfered with the plaintiffs' contractual relationship with Ted Mignatti, III, Ted Mignatti, Jr.,

and GLP by inducing or otherwise causing the breach and/or failure to perform under the LC

Agreement.  The plaintiffs also claim that Ted Mignatti, Jr., Steve McKenna, GLP, and the Creek

Road defendants tortiously interfered with the plaintiffs' contractual relationship with Ted

Mignatti, III, by inducing or otherwise causing the breach and/or failure to perform under the

Bucks County Agreement.  The defendants move to dismiss the tortious interference claims

because they are barred by the gist of the action doctrine.

      To state a claim for tortious interference with contract, a party must allege: (1) an existing

contractual relationship; (2) the purpose or intent to harm the plaintiff by preventing the relation

from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4)

the occasioning of actual damage resulting from the defendant's conduct.  Kelly-Springfield Tire

Co. v. D'Ambro, 596 A.2d 867, 871 (Pa. Super. Ct. 1991).  Under Pennsylvania law, parties to

the contract cannot be proper defendants for a tortious interference claim pertaining to that

contract.  Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995) ("Essential to recovery on

the theory of tortious interference with a contract between a plaintiff and a third person. . . . As a

result there must be a contractual relationship between the plaintiff and a party other than the

defendant.").

A tortious interference with contract claim is barred by the gist of the action doctrine if it

is not independent of a contract claim that is pled along with it.  Bohler-Uddeholm, 247 F.3d 79.

The gist of the action test focuses on the source of the claims.  Id.  "[T]o be construed as a tort

action, the [tortious] wrong ascribed to the defendant must be the gist of the action with the

contract being collateral."  Id. at 103.  The gist of the action doctrine bars tort claims arising

solely from a contract between the parties; where the duties allegedly breached were created and

grounded by the contract itself; where the liability stems from a contract; or where the tort claim

essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract.  eToll, 811 A.2d at 20.

The defendants argue that the gist of the action doctrine bars the plaintiffs' tortious interference with contract claims.[16]  But, neither McKenna nor the Creek Road defendants were parties to the LC Agreement, and they cannot have personally breached that contract.  Similarly, Ted Mignatti, Jr., Steve McKenna, GLP, and the Creek Road defendants are not parties to the Bucks County Agreement,[17] and they cannot have personally breached that contract.  Accordingly, the claims for tortious interference with contract may be separate and distinct from the breach of contract claims and the defendants' motion to dismiss the tortious interference with contract claim is denied.

### 4. Civil Conspiracy

The plaintiffs bring a civil conspiracy claim against all of the defendants.  A claim for civil conspiracy "requires that two or more people conspire to do an unlawful act."  McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005); Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (finding that in a claim for civil conspiracy, a plaintiff must establish that "two or more persons act[ed] with a common purpose to do an unlawful act or to do a lawful act

---

[16]  The defendants also move to dismiss this claim under the economic loss doctrine. However, the economic loss doctrine does not fit the instant case.  The economic loss doctrine developed to preclude products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions.  Bohler-Uddelholm, 247 F.3d at 104 n.11.

[17]  The parties dispute if Ted Mignatti, Jr. is a party to the Bucks County Agreement. Because the nature of this agreement is unclear and because Ted Mignatti, Jr.'s role has not been clearly established, I leave that question for later in this litigation.

by unlawful means . . .").  A civil conspiracy claim also requires an underlying tort.  Boyanowski
v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000).  "Once an underlying tort
has been alleged, only a finding that the underlying tort has occurred" will support a claim for
civil conspiracy.  Id.  The plaintiffs pled tortious interference with contract and breach of
fiduciary duty as the underlying torts for the civil conspiracy claim.[18]  The defendants move to
dismiss the civil conspiracy claim because the plaintiffs have not properly pled the underlying
torts.

      The plaintiffs properly pled their tortious interference with contract claim against Steve
McKenna and the Creek Road defendants, their breach of fiduciary duty claim against GLP, Ted
Mignatti, Jr., and Tracy Mignatti, as executrix for Ted Mignatti, III's estate, as to the
development of Heritage Creek, and their breach of fiduciary duty claim against GLP as to the
failure to provide notice of sale to a Mignatti related company.  Accordingly, the civil conspiracy
claim as to these defendants and claims are properly pled and the motion to dismiss is denied.

### 5. Unjust Enrichment

      The plaintiffs bring an unjust enrichment claim against all of the defendants.  To plead
unjust enrichment, a plaintiff must allege that: (1) the plaintiff conferred benefits upon the
defendant; (2) the defendant appreciated and accepted such benefits; and (3) it would be
inequitable for the defendant to retain the benefit without payment of the value.  Wiernick v.

---

[18]  The plaintiffs also allege that their breach of contract claim can support their civil
conspiracy claim.  However, a "breach of contract, without more, is not a tort."  Windsor
Securities, Inc. v. Hartford Life Ins. Co., 986 F.2d 655 (3d Cir. 1993).  See Glazer v. Chandler,
200 A.2d 416, 418 n.1 (Pa. 1964).  Because a claim for civil conspiracy can only exist with "a
finding that the underlying tort has occurred," Boyanowksi, 215 F.3d at 405, the claim for civil
conspiracy cannot be based on a breach of contract.

PHH U.S. Mortgage Corp., 736 A.2d 616, 622 (Pa. Super Ct. 1999).  A plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties. Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987); Villoresi v. Femminella, 856 A.2d 78, 84 (Pa. Super. Ct. 2004) (finding that an unjust enrichment claim may only arise when a transaction of the parties is not otherwise governed by an express contract.). "An express contract is one where the parties specifically express the terms of the agreement, either orally or in writing."  Crawford's Auto Center, Inc. v. Com. of Pa., 655 A.2d 1064, 1066 (Pa. Cmwlth. 1995) (citing RESTATEMENT (SECOND) OF CONTRACTS § 4 (1981)).  The defendants argue that the unjust enrichment claim should be dismissed because it is based on express contracts.

It is undisputed that the LC Agreement is an express written contract.  Because an unjust enrichment claim cannot be based on a relationship governed by an express contract, the unjust enrichment claim is dismissed in so far as it is based on the LC Agreement.

The parties dispute whether the Bucks County Agreement is a contract.  It has not yet been determined whether the Bucks County Agreement is an express contract.  Because the Federal Rules of Civil Procedure enable the plaintiffs to plead in the alternative, a claim for breach of contract and unjust enrichment can coexist at this early stage of litigation.  Fed. R. Civ. P. 8(a).  Accordingly, the defendants' motion to dismiss the unjust enrichment claim as to the Bucks County Agreement is denied.

**C.  Remedies**

**1.  Declaratory Judgment**

The plaintiffs ask this Court to enter a declaratory judgment against all of the defendants requiring them to pay 12.5% of the building profits each to Kenneth Alpart and Dan Kerrane. The plaintiffs seek this declaratory judgment because McKenna told Alpart and Kerrane that they would only receive 6.25% of the building profits each and not 12.5%, as was previously agreed.

The Declaratory Judgment Act provides that:

> [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C.A. § 2201(a).   The defendants moved to dismiss the plaintiffs' claim for a declaratory judgment because it is not ripe.  The ripeness determination for a declaratory judgment claim is difficult because declaratory judgment is forward-looking by nature.  Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 646 (3d Cir. 1990).  To determine if a declaratory judgment claim is ripe, a court considers: (1) the adversity of the interest between the parties to the action; (2) the conclusiveness of the declaratory judgment; and (3) the practical help, or utility of the declaratory judgment.  Id.; Travelers, Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995).  For the parties' interests to be adverse, the plaintiffs must allege that the defendants took adverse overt conduct – mere speculation is insufficient.  Step-Saver, 912 F.2d at 648.

The defendants argue that the declaratory judgment claim is not ripe because the parties' interests are not adverse – they have not taken overt acts to prevent the distribution of the building profits as agreed.  At this point in the litigation, the role of each of the defendants is not

24

yet clear.  Accordingly, the motion to dismiss the declaratory judgment claim is denied without prejudice to be raised again at a later stage of litigation.

### 2.  Accounting

The plaintiffs bring a claim for an accounting against GLP and the Creek Road defendants.  In an accounting claim, a plaintiff seeks to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant. <u>See</u>  <u>McMurtrie v. Dunlap</u>, 16 A.2d 13 (Pa. 1940); BLACKS LAW DICTIONARY (8th ed. 2004).  At this point in the litigation, the role of each defendant is not yet clear.  Accordingly, the motion to dismiss the request for an accounting is denied without prejudice to be raised again at a later stage of litigation.

## ORDER

_____AND NOW this ___19ᵗʰ_____ day of August, 2008, it is **ORDERED** that Defendants'

Motion to Dismiss (Doc. # 20) is **GRANTED** in part and **DENIED** in part:

- Defendants' Motion to Dismiss under Rule 12(b)(1) because the claims are not ripe and the plaintiffs lack standing is **DENIED**.

- Defendants' Motion to Dismiss Count I (Breach of Fiduciary Duty) is:
  - **GRANTED** as to the following allegations:
    - Causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land;
    - Causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value; and
    - Establishing a distribution plan that has reduced Plaintiffs' shares of the building profits.
  - **DENIED** as to the following allegations without prejudice to be raised again at a later stage in the litigation:
    - Causing the Bucks County land to be transferred to a Mignatti related company without advance notice to Plaintiffs; and
    - Causing the transfer and/or development of the Bucks County land to be delayed by, inter alia, construction of the Heritage Creek project.

- Defendants' Motion to Dismiss Counts II and III (Breach of Contract) is:
  - **GRANTED** as to the following allegation:
    - Causing the Bucks County land to be transferred to a Mignatti related company without advance notice to Plaintiffs.
  - **DENIED** as to the following allegations without prejudice to be raised at a later stage in the litigation:
    - Causing the Bucks County land to be transferred to a Mignatti related company without having first established a fair market value price for the land;
    - Causing the land profits derived from the transfer price of the Bucks County land to be reduced by transferring the property to a Mignatti related company at less than fair market value;
    - Causing the transfer and/or development of the Bucks County land to be

delayed by, inter alia, construction of the Heritage Creek project; and

- Anticipatorily breaching the Bucks County and LC agreements.

- Defendants' Motion to Dismiss Counts IV and V (Tortious Interference) is **DENIED** without prejudice to be raised again at a later stage in the litigation.

- Defendants' Motion to Dismiss Count VI (Civil Conspiracy) is **DENIED** without prejudice to be raised again at a later stage in the litigation.

- Defendants' Motion to Dismiss Count VII (Unjust Enrichment) is:
  - **GRANTED** as to the LC Agreement; and
  - **DENIED** without prejudice to be raised again at a later stage in the litigation as to the Bucks County Agreement.

- Defendants' Motion to Dismiss Count VIII (Declaratory Judgment) is **DENIED** without prejudice to be raised again at a later stage in the litigation.

- Defendants' Motion to Dismiss Count IX (the Request for Accounting) is **DENIED** without prejudice to be raised again at a later stage in the litigation.

- All claims against Tracy Mignatti in her individual capacity are **DISMISSED**.


s/Anita B. Brody

_____

Anita B. Brody, J.



VIA ECF:                           VIA MAIL:


O:\ABB 2008\A-K\Alpart -- MTD.wpd