IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth D. Alpart, et al, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | Civil Action No. 07-4457 (AB) |
| : | |
| General Land Partners, Inc., et al, : | |
| : | |
| Defendants. : | |

## PLAINTIFFS' TRIAL MEMORANDUM ADDRESSING LEGAL ISSUES

Pursuant to this Court's October 29, 2009 Amended Scheduling Order, Plaintiffs Kenneth D. Alpart ("Alpart"), Lynette Kerrane and Eric Wojcikiewicz as Trustees of the GST Non-Exempt QTip Marital Trust, and Lynette Kerrane individually (collectively, "Plaintiffs"), through their undersigned counsel, respectfully submit their Trial Memorandum addressing the legal issues that are central to this case.

Plaintiffs bring this action against Defendants General Land Partners, Inc. ("General Land Partners"), Creek Road Development Group, L.P. ("Creek Road Partnership"), Creek Road Development Group, Inc. ("Creek Road Corporation"), Tracy Mignatti as Executrix of the Estate of Theophile J. Mignatti III ("Ted Mignatti III"), Theophile J. Mignatti, Jr. ("Ted Mignatti Jr."), and Steve McKenna ("McKenna") (collectively, "Defendants").  In their Amended Complaint, Plaintiffs have asserted nine claims, all of which arise out of an agreement among Alpart, Daniel M. Kerrane, Jr. ("Dan Kerrane"), and Ted Mignatti III to purchase and develop land in Bucks County, Pennsylvania  ("Bucks County Land;" "Bucks County Agreement"), and/or the limited partnership agreement (the "LC Agreement") entered into by those same individuals and Ted Mignatti Jr., pursuant to the Bucks County Agreement.  The law

applicable to each of Plaintiffs' claims, and with respect to Defendants' Counterclaims, is set forth below.

**I.   Defendants General Land Partners, Tracy Mignatti, And Ted Mignatti Jr. Are Liable For Breach Of Fiduciary As Alleged In Count I.**

In order to support a claim of breach of fiduciary duty, a plaintiff must first prove that the defendant owed her a fiduciary duty, and she then must establish the following elements: (i) that the defendant either negligently or intentionally failed to act in good faith and for the benefit of the plaintiff; (ii) that the plaintiff was injured; and (iii) that the defendant's failure to act in good faith and for the benefit of the plaintiff was a "real factor" in causing the plaintiff's injuries. McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (citing Pennsylvania's Suggested Standard Jury Instructions).

In the context of a limited partnership, general partners owe a fiduciary duty to limited partners and may be found liable for breaching that duty. 15 Pa. Cons. Stat. Ann. §§ 8334, 8533; Jarl Investements, L.P. v. Fleck, 937 A.2d 1113, 1123 (Pa. Super. Ct. 2007); see Haymond v. Lundy, No. 99-5015, 2000 WL 804432, at *14 (E.D. Pa. June 22, 2000) (Shapiro, J.) ("The general partner of a limited partnership owes the partnership and his partners the fiduciary duty of loyalty."); see also Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970) ("[P]artners owe a fiduciary duty one to another . . . . One should be allowed to trust his partner, to expect that he is pursuing a common goal and not working at cross-purposes.").

Furthermore, an officer, affiliate, or parent of a corporate general partner who either controls or participates in the alleged wrongdoings of the general partner owes the same fiduciary duties to limited partners as the general partner itself. Wallace v. Wood, 752 A.2d 1175, 1181 (Del. Ch. 1999); see also Bigelow/Diversified Secondary P'ship Fund v.

Damson/Birtcher Partners, No. 16630, 2001 WL 1641239, at *8 (Del. Ch. Dec. 4, 2001) (holding that affiliates of a corporate general partner owe fiduciary duties to limited partners based on their control over the "day-to-day operations and affairs" of the partnership).

More specifically, the Pennsylvania courts have adopted a "participation theory," which "imposes personal liability on corporate officers or shareholders where they have personally taken part in the actions of the corporation." Wicks v. Milzco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983). Where the wrong alleged is "a result of active, knowing participation" by limited partners, such partners may be liable under Pennsylvania law. Brindley v. Woodland Village Restaurant, 652 A.2d 865, 868 (Pa. Super. Ct. 1995); see also Aug. 19, 2008 Mem. & Order, doc. 51, at p. 12 & n.12 (discussing Pennsylvania law and stating that "the participation theory is sufficient for holding the limited partners liable").

Where the transaction at issue is a self-interested one, the general partners – and others liable pursuant to the participation theory – owe the limited partners the highest duty to show the "entire fairness" of the transaction in which they have a self-interest. Wurtzel v. Park Town Place Apartments Ltd. P'ship, No. 3511, 2001 WL 1807405, at *5 (Pa. Ct. C.P. Sept. 11, 2001) (citing Smith v. VanGorkom, 488 A.2d 858, 890 (Del. 1985), and holding that "a general partner has a . . . duty of full and fair disclosure"); cf. Geddes v. Anaconda Copper Mining Co., 254 U.S. 590, 599 (1921) (discussing transactions between corporations with common directors, and holding that "where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness").

Here, Plaintiffs will prove at trial that defendants McKenna, Ted Mignatti Jr. and Tracy Mignatti operated and controlled all relevant entities (*i.e.*, LC Associates and its general partner, General Land Partners; and Creek Road Partnership and its general partner, Creek Road

3

Corporation) at all relevant times and with regard to all relevant decisions (*i.e.*, when and at what value to transfer the Bucks County Land, and when and how land and building profits should be distributed). The Bucks County Land was transferred from LC Associates to Creek Road Partnership in what constituted a self-interested transaction, in light of the fact that the same individuals controlled both entities. Defendants McKenna, Ted Mignatti, Jr., and Tracy Mignatti unilaterally set the transfer value at $50,000 per lot – a value which they knew to be less than a third of the land's fair market value at that time. Plaintiffs were not notified of the transfer, or of the transfer value, until more than six months after the transfer took place. Moreover, Plaintiffs never approved the decision to transfer the land for a value that was significantly less than its fair market value.

Furthermore, Defendants have admitted that they intend to distribute any building profits in a manner that is inconsistent with the terms of the original agreement among the parties. Specifically, they have announced that the 25% of such profits that the original agreement allocated to Plaintiffs to split will instead be distributed to LC Associates, the limited partners of which are Plaintiffs, Tracy Mignatti and Ted Mignatti Jr. (with each limited partner holding 24.75% of the partnership shares). Such distribution will reduce Plaintiffs' shares by half. Plaintiffs never agreed to receive their distributions of building profits in this manner.

Ted Mignatti Jr. and Tracy Mignatti, despite their designation as limited partners of LC Associates, knowingly and actively participated in the conduct described above. They failed to provide Plaintiffs with full and fair disclosure of the details surrounding the transfer of the Bucks County Land, they engaged in a self-interested transaction without regard for the interests of the limited partners, and they have improperly decided to reduce Plaintiffs' shares of building profits. As such, the evidence will establish that they are liable – along with General

Land Partners – for breaching the fiduciary duty owed to Plaintiffs as limited partners of LC Associates.

**II.     Defendant Tracy Mignatti Is Liable For Breach Of The Bucks County Agreement As Alleged In Count II, And Defendants General Land Partners, Tracy Mignatti, and Ted Mignatti Jr. Are Liable For Breach Of The LC Agreement As Alleged In Count III.**

In order to establish a breach of contract claim under Pennsylvania law, a plaintiff must prove: (i) the existence of a contract, including its essential terms; (ii) a breach of duty imposed by the contract; and (iii) resultant damages. Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). A contract need not be written; an oral agreement is legally binding and fully enforceable, even where it is not confirmed in writing. See DeMarchis v. D'Amico, 637 A.2d 1029, 1033 (Pa. Super. Ct. 1994) (recognizing the widely-accepted principle that a partnership need not have a formal or written partnership agreement); 4 Corbin on Contracts § 17.12 (1997) (explaining that an oral partnership agreement is valid even if the partnership will own or deal in real property).

"It is a presumption of law that the parties to a contract bind not only themselves but their personal representatives," and, as a result, executors of estates "are held liable on all contracts of the testator which are . . . broken after his death," with only limited exceptions for contracts relating to personal skill or taste. United States ex rel Wilhelm v. Chain, 300 U.S. 31, 35 (1937). Additionally, corporate officers or shareholders face liability for breaches of a corporate entity's contractual obligations where those officers "have personally taken part in the actions of the corporation. Wicks, 470 A.2d at 90; see also Brindley, 652 A.2d at 868 (Pa. Super. Ct. 1995) (discussing the participation theory, which allows for limited partners to be held liable for wrongdoings that are "a result of [their] active, knowing participation").

5

As Pennsylvania courts have recognized, every contract contains an implicit term requiring the parties to exercise their obligations under the contract in a manner that is consistent with their duty of good faith and fair dealing.  Kaplan v. Cablevision of Pa., Inc., 671 A.2d 716, 722 (Pa. Super. Ct. 1996).  A party claiming a breach of an implied covenant of good faith and fair dealing must establish the traditional elements of a breach of contract claim, which are set forth above.  See CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009); Donahue v. Fed. Express Corp., 753 A.2d 238, 242 (Pa. Super. Ct. 2000) (explaining that there is no independent cause of action in Pennsylvania for breach of an implied duty of good faith without an underlying breach of contract).

Any ambiguity in the terms of a contract will be construed against the draftsman. Raiken v. Mellon, 582 A.2d 11, 13 (Pa. Super. Ct. 1990).  Although the terms of a contract, whether oral or written, may be modified by agreement of all parties to the contract, the burden of proving that the terms have been validly modified is on the party asserting the modification. Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 558 (Pa. Super. Ct. 2006).

When one party to a contract anticipatorily repudiates the contract, the other party may reject the breach and elect to allow an opportunity for performance, or it may accept the breach and "place the repudiating party in breach immediately."  Total Control, Inc. v. Dahaher Corp., 359 F. Supp. 2d 387, 393-94 (E.D. Pa. 2005) (Brody, J.); see also Simon Wrecking Co., Inc. v. AIU Ins. Co., 350 F. Supp. 2d 624, 634-35 (E.D. Pa. 2004) (Brody, J.).

The evidence at trial will demonstrate that Alpart, Dan Kerrane[1] and Ted Mignatti III[2] entered into an oral contract in 1994 to purchase and develop land in Bucks County (the

---

[1]  Dan Kerrane passed away in 2002.  Plaintiff Lynette Kerrane is his widow, and the Trustee Plaintiffs are his successors in interest and obligations under the relevant contracts and in the relevant partnerships.

6

"Bucks County Agreement" and the "Bucks County Land"). Under the terms of that contract, which were confirmed in a letter written in 1994 by Ted Mignatti III, the Bucks County Land was to be sold for fair market value, Plaintiffs were entitled to 50% of the profits from that sale ("land profits"), and Plaintiffs were entitled to 25% of any profits from the development of the land if it was bought and developed by a Mignatti related entity ("building profits"). These original terms were never changed, because Plaintiffs never assented to any modifications of the Bucks County Agreement.

Pursuant to the terms of the Bucks County Agreement, a Pennsylvania limited partnership – LC Associates, L.P. – was formed to purchase, hold, and resell the Bucks County Land at fair market value. The limited partners in LC Associates were Alpart, Dan Kerrane, Ted Mignatti III, and Ted Mignatti Jr., all of whom held equal shares. The general partner in LC Associates was General Land Partners. A written partnership agreement was signed by the limited partners ("LC Agreement"). Under the terms of the LC Agreement, (i) the general partner was granted the authority to control the purchase and sale of real estate by LC Associates; (ii) the general partner was obligated to cause profits to be distributed to the limited partners on a quarterly basis in accordance with their partnership shares; and (iii) the general partner was obligated to conduct itself in accordance with an implied duty of good faith and fair dealing. The LC Agreement contained no provision authorizing the general partner to disregard fair market value when selling the partnership's real estate holdings.

---

(...continued)
2   Ted Mignatti III passed away in 2001. Defendant Tracy Mignatti is his widow, the executrix of his estate, and his successor in interest and obligations under the relevant contracts and in the relevant partnerships.

As set forth above, General Land Partners was operated and controlled by defendants McKenna, Ted Mignatti Jr., and Tracy Mignatti. The evidence will show that those defendants caused the partnership to sell the Bucks County Land for a fraction of its fair market value without notice to or approval by Plaintiffs. Furthermore, when the first eleven lots within the Bucks County Land were developed and sold, and after the $550,000 in land profits were transferred by Creek Road Partnership to LC Associates, defendants McKenna, Ted Mignatti Jr., and Tracy Mignatti decided to transfer the profits back to Creek Road Partnership rather than distribute them to the limited partners as required. Finally, the same defendants decided that any future building profits will be distributed as described in the preceding section, in a manner that will reduce Plaintiffs' shares by half.

By engaging in all of the above-described conduct, both the Bucks County Agreement and the LC Agreement have been breached. Tracy Mignatti, as executor of her late husband's estate, is therefore liable for breach of the Bucks County Agreement (to which her late husband was a party). Similarly, Tracy Mignatti, Ted Mignatti Jr, and General Land Partners are liable for breach of the LC Agreement.

### III.    All Defendants Except Tracy Mignatti Are Liable For Tortious Interference With The Bucks County Agreement As Alleged In Count IV, And Defendants McKenna, Creek Road Partnership, And Creek Road Corporation Are Liable For Tortious Interference With The LC Agreement As Alleged In Count V.

Under Pennsylvania law, the elements of a claim for tortious interference with contractual relations are: (i) the existence of a contract or a prospective contractual relationship between the plaintiff and a third party; (ii) purposeful action taken by the defendant, specifically intended to harm or prevent the existing or prospective relationship; (iii) the absence of privilege or justification for the defendant's action; and (iv) actual legal damage resulting from the

8

defendant's conduct. Flynn v. Health Advocate, Inc., No. 03-3764, 2004 WL 41929, at *8 (E.D. Pa. Jan. 13, 2004). It follows from these elements that a party may not tortiously interfere with his own contract. Maier v. Maretti, 671 A.2d 701, 707 (Pa. Super. Ct. 1995).

At trial, Plaintiffs will establish that, based on the actions described in the preceding two sections, various Defendants tortiously interfered with both the Bucks County Agreement and the LC Agreement. Specifically, all Defendants other than Tracy Mignatti intentionally and without justification interfered with the Bucks County Agreement – none of those Defendants were parties to the Bucks County Agreement, but all of them (through McKenna and Ted Mignatti Jr.) engaged in conduct that interfered with its terms requiring transfer of the Bucks County Land for fair market value and describing the agreed-upon structure for distribution of land and building profits. Likewise, McKenna, Creek Road Partnership, and Creek Road Corporation intentionally and without justification interfered with the terms of the LC Agreement requiring the partnership to handle its real estate holdings fairly and in good faith, and requiring fair distribution of its profits to the limited partners. The evidence will show that such conduct by defendants was undertaken for the specific purpose of decreasing the profits to which Plaintiffs are entitled under the Bucks County and LC Agreements, all to the financial detriment of Plaintiffs.

**IV.   All Defendants Are Liable For Civil Conspiracy As Alleged In Count VI.**

A plaintiff alleging a civil conspiracy must prove (i) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;" (ii) an overt act taken in furtherance of the conspiracy; and (iii) resulting damage. Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. Ct. 2004). In order to maintain a cause of action for civil conspiracy, there must be an

underlying tort applicable to the act which forms the object of the conspiracy.  McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000).

Plaintiffs will prove at trial that, in order to maximize their own personal financial gain, all of the Defendants agreed:  (i) to breach and/or tortiously interfere with the Bucks County Agreement and the LC Agreement; and (ii) to breach or cause to be breached the fiduciary duties owed to Plaintiffs by the general partner of LC Associates.  The Defendants carried out the actions described in the preceding sections in furtherance of their conspiracy.  Plaintiffs have been (and will continue to be) harmed, as their land profits have been reduced (due to the reduced transfer value assigned by Defendants when they caused the Bucks County Land to be transferred to Creek Road Partnership), their portion of the $550,000 in land profits already realized was transferred back to Creek Road Partnership without their consent, and Defendants intend to reduce Plaintiffs' share of any building profits by half (unilaterally allocating the other half of such profits to be split between defendants Tracy Mignatti and Ted Mignatti Jr.) if and when such profits are realized.

**V.    All Defendants Are Liable For Unjust Enrichment As Alleged In Count VII.**

Because one of the two contracts at issue in this case is oral (the Bucks County Agreement), Plaintiffs have alleged a claim for unjust enrichment as an alternative to their breach of contract claim with respect to that agreement.  In the unlikely event that the Court concludes that the oral agreement at issue was not a valid contract, Plaintiffs will alternately establish the following elements with respect to their unjust enrichment claim:  (i) that Plaintiffs conferred benefits upon Defendants; (ii) that Defendants appreciated and accepted such benefits; and (iii) that it would be unfair for Defendants to retain the benefits conferred without payment of value.  Wiernik v. PHH U.S. Mortgage Corp., 736 A.2d 616, 622 (Pa. Super. Ct. 1999).

10

Here, if necessary, Plaintiffs will demonstrate that they conferred benefits upon Defendants in the form of the capital contributions made by Alpart and Dan Kerrane in connection with the acquisition, assembly and remediation of the Bucks County Land. Indeed, Alpart and Dan Kerrane contributed the initial $1.26 million that got the Bucks County project off to its start, and then continued to make contributions as needed for nearly a decade thereafter. Defendants accepted those capital contributions and used them to embark on a subdevelopment project that is intended to yield 210 residential lots and a public golf course. Basic principles of fairness require that Plaintiffs be compensated – and that such compensation should logically be provided as shares of land and building profits realized during the course of the project – for the benefits they (or their predecessors in interest) have conferred.

## VI.   Plaintiffs Are Entitled To The Declaration They Seek In Count VIII.

Declaratory judgment is appropriate under Pennsylvania law when a plaintiff can satisfy the following elements: (i) that the parties' interests are adverse; (ii) that a judicial judgment would be conclusive; and (iii) that a judgment would be of practical utility to the parties. Philadelphia Fed. of Teachers v. Ridge, No. 96-8051, 1997 WL 364397, at *6 (E.D. Pa. June 20, 1997). It is well-established that a party seeking a declaratory judgment "need not decide between attempting to meet the nearly insurmountable burden of establishing that the relevant injury is a mathematical certainty to occur, nor must a party await actual injury before filing suit [because] [e]recting such barriers would eviscerate the Declaratory Judgment Act and render the relief it was intended to provide illusory." Id. (citing Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995), which states that "the party seeking declaratory relief need not wait until the harm has occurred").

11

Plaintiffs' proof at trial will establish that the terms of the original Bucks County Agreement – terms which were never subject to any valid modification – required that Plaintiffs receive 25% of any building profits realized in connection with the development of the Bucks County Land.  Such profits are to be paid directly to Plaintiffs, and are not to be diluted by distribution through LC Associates, in which Plaintiffs only hold a collective 49.5% partnership interest.  Notwithstanding the clear terms of the Bucks County Agreement, Defendants have announced their intention to unilaterally change those terms and make building profit distributions to LC Associates.

The parties' interests with respect to building profits are plainly adverse, as Plaintiffs are interested in receiving their entire due share of such profits, while Defendants are interested in improperly increasing their own share of such profits at Plaintiffs' expense. Furthermore, a declaration by the Court mandating that Defendants distribute Plaintiffs' 25% of any building profits in accordance with the terms of the Bucks County Agreement will be conclusive and will define the relationship among the parties as the project advances, for as long as the Bucks County Land is under development.

### VII. Plaintiffs Are Entitled To The Accountings They Seek From General Land Partners and Creek Road Corporation In Count IX.

Under Pennsylvania law, an accounting is the proper relief for breach of an express or implied duty to account for money due to a plaintiff, including profits which a defendant is obliged to surrender, McMurtrie v. Dunlap, 16 A.2d 13 (Pa. 1940), and in recognized fiduciary relationships where one party controls another's money or property, Donatelli v. Carino, 122 A.2d 36 (Pa. 1956).  "An *equitable* accounting is proper where a fiduciary relationship exists between the parties, where fraud or misrepresentation is alleged, *or*

where the accounts are mutual or complicated, and plaintiff does not possess an adequate remedy at law." Baird v. Macklin, No. 11476, 2008 WL 5600765 (Pa. Ct. C.P. Beaver County Dec. 11, 2008) (citing Rock v. Pyle, 720 A.2d 137, 142 (Pa. Super. Ct. 1998)) (emphasis added).

As explained in the preceding sections, Plaintiffs will demonstrate at trial that a fiduciary relationship existed between Plaintiffs and Defendants General Land Partners, Tracy Mignatti and Ted Mignatti Jr. Furthermore, McKenna, Ted Mignatti Jr. and Tracy Mignatti operate and control both General Land Partners and Creek Road Corporation and have authorized transfers of funds back and forth between the partnerships in which those corporations are general partners. General Land Partners and Creek Road Corporation are in possession of the accounts relating to any profits generated from the sale and development of the Bucks County Land, a portion of which is to be surrendered to Plaintiffs. As such, Plaintiffs are entitled to the accountings they seek from both entities.

**VIII. Defendants Are Not Entitled To The Declarations They Seek In Count I Of Their Counterclaim.**

In their first Counterclaim, Defendants (and Counterclaim Plaintiffs) seek eighteen specific declarations which essentially set forth their view of the facts in this case. The elements that Defendants must establish in order to demonstrate that they are entitled to those declarations are set forth above in Section VI. Although the interests of the parties are adverse, and a determination by this Court with respect to many of the facts set forth in Defendants' Counterclaim would be both conclusive and of utility to the parties, the evidence at trial will reveal that the declarations sought by Defendants in paragraph 41 are, for the most part, simply not true.

As set forth in the preceding sections of this Memorandum, the evidence will show that: (i) Ted Mignatti Jr. was not a party to the Bucks County Agreement; (ii) the $50,000 per-lot transfer price selected by Defendants was not fair market value and, thus, was not consistent with the terms of the Bucks County Agreement or the LC Agreement; (iii) Plaintiffs are entitled to a full 25% of any building profits, without the dilution caused by distributing such profits through LC Associates; (iv) Tracy Mignatti and Ted Mignatti Jr. exercised control and decision-making authority with respect to General Land Partners and, as such, are liable along with General Land Partners for breaching the fiduciary duties owed to Plaintiffs; and (v) Plaintiffs have sustained damages as a result of Defendants' actions. These facts, once established, will be fatal to Defendants' Counterclaim for declaratory judgment.

### IX. Plaintiffs Have Not Breached Any Contract, Nor Have They Dealt With Defendants Unfairly Or In Bad Faith As Alleged In Count II Of Defendants' Counterclaim.

In Count II of their Counterclaim, defendants Ted Mignatti Jr., Tracy Mignatti, and General Land Partners allege that Plaintiffs breached an implied covenant of good faith and fair dealing under the Bucks County and/or LC Agreements. Under Pennsylvania law, and as stated in Section II above, a party claiming a breach of an implied or express covenant of good faith and fair dealing must establish the elements of a breach of contract claim. See CRS Auto Parts, 645 F. Supp. 2d at 369; Donahue, 753 A.2d at 242; see also Section II, supra (listing the elements of a breach of contract claim and citing cases).

The evidence at trial will reveal that defendants Ted Mignatti Jr., Tracy Mignatti and General Land Partners cannot establish those elements. Although the evidence will show that two contracts did exist – the Bucks County Agreement and the LC Agreement – there will be no evidence to show that Plaintiffs breached either contract or that Defendants suffered any

harm. Defendants' proof will only establish that Plaintiffs sued them, and that they had to defend against the instant lawsuit. However, it is Plaintiffs' right to file a non-frivolous in an effort to seek redress for the harm they have suffered as a result of Defendants' wrongdoings. Thus, Defendants will not prevail on their second Counterclaim.

                                                Respectfully submitted,

Date:   March 19, 2010

/s/ Stephen J. Kastenberg\_\_\_\_
Stephen J. Kastenberg
Jeffrey S. Rosenblum
Amy Shellhammer
Pa. ID Nos. 70919, 28809 & 91804
kastenberg@ballardspahr.com
rosenblumjs@ballardspahr.com
shellhammera@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500 (phone)
(215) 864-8999 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I served a copy of the foregoing Trial Memorandum Addressing Central Legal Issues upon below-listed counsel by ECF and such document is available for viewing and downloading on the ECF system:

>Mary Ellen O'Laughlin, Esq.
>Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
>260 South Broad Street
>Philadelphia, PA 19102
>(215) 569-2516
>*Attorney for Defendants*

Dated: March 19, 2010                    /s/ Amy Shellhammer
                                         Amy Shellhammer