IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH D. ALPART, et al. | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | NO. 07-4457 |
| GENERAL LAND PARTNERS, INC., et al. | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                              October 29, 2010
UNITED STATES MAGISTRATE JUDGE

      Presently before the Court are "Defendant's Motion to Enforce Confidential Settlement Filed Under Seal" (Doc. No. 122) (hereinafter "Defendant's Motion") and "Plaintiff's Cross-Motion to Enforce Confidential Settlement Filed Under Seal" (Doc. No. 126) (hereinafter "Plaintiff's Cross-Motion"). The Motions have been fully briefed, the Court has considered the matter at oral argument, and it is ripe for adjudication.

      Plaintiffs are Kenneth D. Alpart, Lynette Kerrane, and Eric Wojcikiewicz, as Trustees of GST Non-Exempt Qtip Marital Trust, and Lynette Kerrane, individually (collectively "Alpart Plaintiffs"). Defendants are General Land Partners, Inc., Creek Road Development Group, LP, Creek Road Development Group, Inc., Tracy Mignatti, Individually and as Executrix of the Estate of Theophile J. Mignatti III, Theophile J. Mignatti, Jr. and Steve McKenna (collectively "GLP Defendants"). As we write only for the parties, we dispense with any detailed statement of the underlying facts of the dispute other than to say they concern the relationships between the parties

over real estate development projects in Bucks County, Pennsylvania and Barnegat, New Jersey.[1]

With involvement of this Court, the parties substantially resolved their differences in May 2010. They then, at the Court's direction, memorialized their agreement in a letter of May 11, 2010 and shortly thereafter filed a stipulation where they advised the Court that they had reached a "settlement on all issues the terms of which are to be set forth in a confidential settlement agreement." Judge Brody approved the Stipulation on June 1, 2010 and upon the consent of the parties, jurisdiction was conferred upon this Magistrate Judge by Judge Brody's Order of June 2, 2010.

After more than three months of negotiation over specific settlement terms, the parties have now come before the Court with their cross-motions asking the Court to order that either plaintiffs or defendants execute one or the other of two versions of the "Confidential Settlement Agreement and Mutual Release" (hereinafter "Settlement Agreement") attached to their respective motions. As they have highlighted for the Court, there is fortunately only a single issue still in dispute. That issue concerns the inclusion, or not, of language inserted by the Alpart Plaintiffs into their version of the agreement at the end of paragraph 3(iii) that:

> ... Creek Road Development, L.P. represents and warrants that as of the date of its execution of this Agreement, it owns that portion of the Bucks County Land that had been approved and partially developed as a golf course and that, until such time as Creek Road Development, L.P.'s payment obligations hereunder have been satisfied in full, it will not sell or convey the golf course or golf course land except upon the following condition. Should Creek Road Development, L.P. sell or convey the golf course or golf course land before Creek Road Development, L.P.'s payment obligations

---

[1] The Bucks County dispute is the subject matter of this specific action, while the Barnegat dispute is the subject matter of litigation pending in the District of New Jersey styled <u>Kenneth D. Alpart, et al. v. Barnegat Hills Associates, Inc.</u>, CA No. 07-cv-5130 (MLC).

> hereunder have been satisfied, then Creek Road Development, L.P. shall place in escrow a portion of the proceeds of such sale or conveyance equal to then unsold number of Bucks County, PA lots multiplied by $25,000 per lot. Such funds shall be held in escrow until Creek Road Development, L.P.'s payment obligations hereunder have been satisfied.

The GLP Defendants have objected to this language stating simply that it was not part of the agreement reached in May 2010 and was not referred to in the May 11th letter.. The Alpart Plaintiffs concede that there was no specific or particular reference to the potential conveyance of the golf course anywhere in that May 11th letter, but they argue that the language is implied as the golf course was "an integral and integrated component with the lots," was used to secure the construction loan which the GLP Defendants used to develop the property and that its conveyance would diminish the value and marketability of the lots and therefore jeopardize the payments to be made by the Alpart Plaintiffs.

While it may well be that the conveyance of the golf course might potentially affect the value of the lots, our concern is that there was no reference to this circumstance at the time of the settlement discussions and we are unable to accept Alpart Plaintiffs' position that the proposition was "implied." The May 11th letter runs 3½ pages, contains some 17 separate bullet points, some with subpoints, and sets out with some particularity that sale of Bucks building lots shall come from the sale of the lots, with no reference being made to the golf course.

A settlement agreement is essentially a contract where the ordinary principals of contract law apply. *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). To be enforceable, the agreement must possess all of the elements of a valid contract. *Id*. As with any contract, it is essential that there be a meeting of the minds as to the subject matter of the agreement and all of its essential terms. *Id*.

3

It is well established in Pennsylvania that where the parties have settled upon those essential terms and the only remaining act is the formalization of the agreement in writing, it can still be enforced. *Field v. Golden Triangle Broad.*, 305 A.2d 689, 694 (Pa. 1973); *see also Restatement (Second) of Contracts* § 26. The fact that one of the parties subsequently refuses to sign the agreement will not preclude its enforcement. *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) ("An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."); *see also Main Line Theaters, Inc. v. Paramount Film Distrib. Corp.*, 298 F.2d 801, 803 (3d Cir.1962); *Pugh v. Super Fresh Food Markets, Inc.*, 640 F.Supp. 1306, 1307 (E.D. Pa. 1986).

We understood that the May 11th letter was to set out the essential terms of the agreement. The stipulation which followed shortly thereafter confirmed that the parties had agreed on a "settlement on all issues." The documents to follow were to formalize the settlement. While they could most certainly add ordinary and customary terms such that the purposes of the settlement might be effectuated, they could not inject new terms. The proposed inclusion which restricts the conveyance of the golf course is, in our view, a new term. It cannot be said to be an ordinary or customary term that would have been understood by the parties to be included as a settlement term. It was certainly not so understood by GLP Defendants. Accordingly, we will enter an Order granting the GLP Defendants' cross-motion to enforce the settlement agreement and deny Alpart Plaintiffs' cross-motion.